UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LITTLE CAESAR ENTERPRISES, INC.,
ET AL.,

Plaintiffs,

v.

REYES 1, INC., ET AL.,

Defendants.

_____/

Case No. 19-cv-11437

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

## AMENDED OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [#23] AND PETITION FOR ATTORNEY FEES AND COSTS [#13]

### I. INTRODUCTION

Plaintiffs Little Caesar Enterprises, Inc. and LC Trademarks, Inc. (together, "Plaintiffs") filed the instant action against Defendants Reyes 1, Inc.; Jason Harmon; and Artemisa Harmon (collectively, "Defendants"). ECF No. 1. On October 21, 2019, after Defendants allegedly breached their Settlement Agreement, Plaintiffs filed an Amended Complaint for breach of contract; trademark infringement; and trade dress infringement. ECF No. 12. Defendants have failed to appear and otherwise defend the instant action.

A hearing on Plaintiffs' Motion for Default Judgment (ECF No. 23) was held on April 16, 2020. On April 17, 2020, the Court entered an Opinion and Order

granting Plaintiff's Motion for Default Judgment [#23].  In its Opinion, the Court ordered Plaintiffs to advise it of their requested attorneys' fees and costs, supported by appropriate evidence, by May 1, 2020.  ECF No. 30, PageID.233.

Presently before the Court is Plaintiff's Petition for Attorney Fees and Costs, which was timely filed.  ECF No. 32.  For the reasons that follow, the Court will **GRANT** Plaintiff's Petition [#32] in this Amended Opinion and Order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The instant action stems from Defendants' alleged failure to comply with the terms of both its Franchise Agreements and Settlement Agreement in operating five Little Caesar franchises.  ECF No. 23, PageID.103.  Among its obligations, Defendants were required to operate their five franchised restaurants in accordance with operational standards, procedures, and specifications prescribed in the Franchise Agreements.  ECF No. 12, PageID.67; *see also* ECF No. 1, PageID.6–8.

Defendants purportedly had a "long history of repeatedly failing to operate their restaurants in accordance with Little Caesar's standards for health, safety, and sanitation[.]"  ECF No. 23, PageID.107.  Plaintiffs sent Notices of Default and Notices to Cure to Defendants on November 19, 2019; March 29, 2019; and April 30, 2019.  *Id.*  On May 14, 2019, Plaintiffs sent a Notice of Franchise Agreement Termination to Defendants.  *Id.*  This informed Defendants that their Agreements were terminated upon their receipt of the Notice.  *Id.* at PageID.107–08.

On May 15, 2019, Plaintiffs then filed a complaint against Defendants alleging claims for breach of contract; trademark infringement; unfair competition; and trade dress infringement.  ECF No. 1.  On June 13 and 27, 2019, Defendants were personally served with a Summons and copy of Complaint.  *See* ECF Nos. 7, 8, 18.  Defendants did not answer or otherwise respond.  ECF No. 23, PageID.113.

Instead, Defendants signed a Settlement Agreement in July 2019.[1]  *Id.* at PageID.108.  In the Agreement, Defendants allegedly agreed to, among other things, immediately pay $11,500.00 to Plaintiffs.  *Id.*; Settlement Agreement ¶ 2.  Defendants purportedly failed to abide by the terms.  ECF No. 23, PageID.111.  Specifically, Defendants failed to pay Little Caesar the $11,500.00 it owed at signing.  *Id.*  Further, Defendants failed to submit a purchase agreement to sell their franchises by the August 21, 2019 deadline.  *Id.*

On September 25, 2019, Plaintiffs sent a letter notifying Defendants that they have failed to comply with their obligations under both the Settlement and Franchise Agreements.  *See* ECF No. 23-3.  Specifically, Plaintiffs notified Defendants of their contractual obligations to immediately de-identify their franchises and comply with their post-termination obligations.  *Id.* at PageID.131.  Plaintiffs asserted that Defendants continued to owe $11,500.00 from the Settlement Agreement, as well as

---

[1] Plaintiffs timely submitted a copy of their Settlement Agreement upon this Court's request.  *See* ECF No. 29.

$490,053.43 in liquidated damages. *Id.* Further, Plaintiffs denoted that Little Caesar was not exercising its option under the Settlement Agreement to assume the lease and/or purchase the assets of any former franchises. *Id.* At the hearing on the instant Motion, Plaintiffs' counsel mentioned that he has not heard from Defendants since late September or early October 2019. Counsel asserted that he has continued to forward any court filings to Defendants—specifically, Jason Harmon's email address, which he used pre-litigation—including the Court's recent Order for Production of Franchise and Settlement Agreements (ECF No. 29).

Approximately two months after sending their September 25, 2019 notice, Plaintiffs visited Defendants' franchises and took notice that each franchise continued to display Little Caesar's trademarks. ECF No. 23, PageID.112. Further, Plaintiffs observed the Little Caesar's trade dress inside the franchises. *Id.* Plaintiffs photographed each franchise and attached such evidence to their instant Motion. *See* ECF No. 23-4.

Plaintiffs filed an Amended Complaint on October 21, 2019, in light of Defendants' alleged continued failure to comply with the Settlement and Franchise Agreements. *See* ECF Nos. 9, 12. Defendants were served on the same day and again failed to respond or otherwise defend this action. ECF No. 23, PageID.113–14. Accordingly, on November 5, 2019, Plaintiffs requested that the Clerk of the

Court enter a default against each Defendant.  ECF Nos. 14, 15, 16.  The Clerk entered a default against each Defendant the following day.  ECF Nos. 19, 20, 21.

Plaintiffs now move the Court to enter default judgment against Defendants. ECF No. 23.  They request: (1) a declaration that Defendants' conduct violated the terms of the parties' Franchise and Settlement Agreements; (2) an order enforcing Defendants' post-termination obligations contained in the Franchise Agreements, including their obligation to immediately de-identify the franchises; (3) monetary damages as a result of Defendants' post-termination obligations; and (4) an award of attorneys' fees and costs incurred in this action.[2]  In support of their Motion, Plaintiffs submit declarations of Plaintiff Little Caesar's Senior Counsel Danielle Lester and Vice President for Compliance Scott Haveman; photographs of Defendants' restaurants; and Plaintiffs' September 25, 2019 Notice of Breach of Settlement Agreement and Notice to Immediately Comply with Post-Termination Obligations.  *See* ECF Nos. 23-1, 23-3, 23-4, 23-5.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) permits the entry of judgment against a defendant who has failed to plead or otherwise defend against an action.  Fed. R. Civ. P. 55(b).  To obtain judgment by default, the plaintiff must first request a default

---

[2] Plaintiffs request that they be permitted to submit an accounting of their attorneys' fees and costs within 14 days of this Court's Order.  ECF No. 22, PageID.28 n.3.

from the clerk pursuant to Rule 55(a).   *Shepard Claims Servs., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986). "[E]ntry of a default against a defendant establishes the defendant's liability."   *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (citation omitted).

Once a default is entered against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in the complaint, except those relating to damages.   *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110–11 (6th Cir. 1995) (citation omitted).   Rule 55(b)(2) provides that the Court "may" conduct a hearing to determine the amount of damages.   Fed. R. Civ. P. 55(b)(2)(B).   However, a hearing is unnecessary if the evidence submitted is sufficient to support the damages request, or if the amount claimed may be discerned from definite figures in documentary evidence or affidavits.   *McIntosh v. Check Resolution Serv., Inc.,* No. 10–14895, 2011 WL 1595150, at *4 (E.D. Mich. April 27, 2011) (citations omitted).

## IV. ANALYSIS

### A. Terms of the Settlement and Franchise Agreements

Upon review of the record, the Court concludes that Plaintiffs have established that Defendants are in default of the July 2019 Settlement Agreement. Pursuant to the terms of this Agreement, Defendants agreed to immediately pay $11,500.00.  Settlement Agreement ¶ 2.  Further, the parties agreed to the following terms: (1) Defendants would have until August 21, 2019 to submit a purchase and

sale agreement to Little Caesar for the sale of their franchises (*Id.* ¶ 3 "Sale of the Franchises"); (2) if Defendants missed this deadline, Little Caesar would inform Defendants of whether it would exercise its option to assume the leases (*Id.* ¶ 4 "In the Event of Non-Sale");[3] (3) if Defendants missed the August 21, 2019 deadline, Defendants also agreed that they would comply with all other post-termination obligations contained in the Franchise Agreements, such as the obligation to return all materials containing Little Caesar's confidential information or trade secrets and the obligation to pay Little Caesars all amounts owed (*Id.* ¶¶ 4.E, 4.F); and (4) Defendants would operate their franchises in accordance with the Franchise Agreements between the time of their signing of the Settlement Agreement and the sale of their franchises, or the franchises' closure in the event of Defendants' failure to transfer them by the deadline (*Id.* ¶¶ 4.D, 7.A "Compliance with the Franchise Agreements and Other Agreements"). Defendants also signed a Franchise Termination and Surrender Agreement and Release for their franchises in conjunction with the Agreement.[4] ECF No. 12, PageID.71; *see also* ECF No. 23,

---

[3] If Little Caesar informed Defendants it was not exercising this option, Defendants agreed to cease operating and de-identify the franchises as specified in the Settlement Agreement's and Franchise Agreements' terms. Settlement Agreement ¶ 4.B. Further, Defendants agreed that the continued use of Little Caesar's trademarks—after they were obligated to de-identify—would constitute "irreparable harm to [Little Caesar], entitling [it] to injunctive relief." *Id.* ¶ 4.C.

[4] Plaintiffs also timely submitted a copy of their Franchise Termination and Surrender Agreement and Release upon this Court's request. *See* ECF No. 29.

PageID.110.   These forms provided for, among other things, "the immediate termination of the Franchise Agreements."  *Id.*; *see also* Franchise Termination and Surrender Agreement and Release 1, 5, 8, 14.

Plaintiffs sent Defendants a notice on September 25, 2019, which informed Defendants that they failed to comply with their contractual obligations.  *See* ECF No. 23-3.  Specifically, Plaintiffs notified Defendants of their contractual obligations to immediately de-identify their franchises and comply with their post-termination obligations.  *Id.* at PageID.131.  Further, Plaintiffs denoted that Little Caesar was not exercising its option under the Agreement to assume the lease and/or purchase the assets of Defendants' franchises.  *Id.*

As of the writing of this Order, Defendants have failed to pay the $11,500.00 owed at signing.  ECF No. 23, PageID.115.  Additionally, Defendants have failed to remove Little Caesar's intellectual property from the premises and otherwise de-identify their former franchises.  *Id.*  Ms. Lester confirmed these breached terms in her attached declaration.  *See* ECF No. 23-1, PageID.125–26.  Thus, Defendants are in default of the Settlement Agreement.  As explained in the following section, Defendants' breach of the Settlement Agreement constitutes an additional threat to Little Caesar's goodwill.  *Id.*

Additionally, the Court concludes that Defendants breached the Franchise Agreements.[5]  Defendants were formerly licensed to use Little Caesar's trademarks, trade name, trade dress, and system of operation under these Agreements.  ECF No. 12, PageID.67.  Defendants agreed to the following conditions: (1) the failure to comply with the terms would constitute a default and that Little Caesar had the right to terminate the Agreement if, among other things, Defendants failed to cure a default within a specified time; persistently violated Little Caesar's operational standards; or any other Franchise Agreement was terminated (Franchise Agreement § 13.2, 13.3, 13.4); (2) Little Caesar had the right to terminate the Agreements if Defendants abandoned their franchises (*Id.* § 13.2.2); (3) Defendants would only use property marks in the manner authorized by Little Caesar (*Id.* § 7.2.1) and that "any unauthorized use thereof shall constitute an infringement" (*Id.* §7.2.5); (4) during the term of the Agreements and after termination, Defendants would not take any action "which may tend to derogate or jeopardize Little Caesar's interest" in its proprietary marks (*Id.* § 7.3.2); and (5) Defendants would not "do or perform any other act injurious or prejudicial to the goodwill associated with the [p]roprietary [m]arks" and the [Little Caesars] System (*Id.* § 15.2.1).

---

[5] Plaintiffs also timely submitted a copy of one of their Franchise Agreements with Defendants upon this Court's request.  *See* ECF No. 29

Defendants failed to sell their franchises by the August 21, 2019 deadline. *Id.* at PageID.72. In their September 25, 2019 letter, Plaintiffs thus signed, dated, and release the Franchise Termination and Surrender agreement and Release forms. *Id.*; *see also* ECF No. 23-3, PageID.131. This notice effectively terminated Defendants' Franchise Agreements. ECF No. 23, PageID.116. Thus, Defendants are also in default of the Franchise Agreements.

Accordingly, Court will enter judgment in Plaintiffs' favor, declaring that Defendants' conduct violated the terms of the Settlement and Franchise Agreements.

## B. Defendants' Post-Termination Obligations

Plaintiffs also seek injunctive relief in order to enforce the post-termination obligations contained in the Franchise Agreements, including Defendants' obligation to de-identify their restaurants. ECF No. 23, PageID.116; *see also* ECF No. 12, PageID.76. The Court finds that Plaintiffs are entitled to this relief.

Courts within this District have recognized that injunctive relief by way of a default judgment is available, especially in cases like this one, where Defendants have had notice of the proceedings. *See, e.g.*, *Domino's Pizza Franchising, LLC v. VTM Pizza, Inc.*, No. X, 2015 WL 9500791 (E.D. Mich. Dec. 31, 2015). A court may grant a trademark owner permanent injunctive relief pursuant to the Lanham Act. 15 U.S.C. § 1116(a). A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010) (quotation omitted).

As to the first factor, irreparable injury "ordinarily follows when a likelihood of confusion or possible risk to reputation appears" from infringement or unfair competition. *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991). Once there is a showing of infringement, a specific finding of likelihood of entry or irreparable harm is thus not required for injunctive relief in a trademark infringement case. *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999). Here, Plaintiffs have shown that they will suffer irreparable harm if an injunction is not issued enjoining Defendants from continuing to use Little Caesar's trademarks and trade dress. ECF No. 12, PageID.70.

The second factor is also satisfied. The Sixth Circuit has held that where there is potential for future harm from infringement, there is no adequate remedy at law. *See Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). Here, there is potential for future harm from infringement because Defendants are continuing their infringing activities. *See* ECF No. 23-4.

As to the third factor, the potential harm to Plaintiffs outweighs any harm that Defendants may suffer.  Notably, Defendants do not face hardship in complying with their obligations under the Franchise and Settlement Agreements.  *Audi*, 469 F.3d at 550.  Plaintiffs, however, face hardship from loss of sales, as it wishes to re-franchise the market, and goodwill.  ECF No. 23, PageID.117.  At the hearing, Plaintiffs' counsel argued that Plaintiffs continue to suffer harm from the public's association with the negative images of the closed franchises.

Finally, the Court finds that it is in the public's interest to issue injunctive relief to prevent customers from being mislead by Defendants' continued unlawful use of Little Caesar's trademarks and trade names.  *Audi*, 469 F.3d at 550.  As provided in the Amended Complaint, and thereby admitted when Defendants defaulted, the continued use of Little Caesar's trademarks and trade names is likely to "confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of [Defendants] are licensed, franchised, sponsored, authorized, or otherwise approved by Little Caesar."  ECF No. 12, PageID.74.

Accordingly, the Court will enter judgment in Plaintiffs' favor for Defendants to immediately and fully comply with the post-termination obligations contained in Sections 14 and 15 of the Franchise Agreements.  Those obligations include, but are not limited to, (1) the requirement that, to the extent that Defendants still are able to access the former premises of their former franchises, they shall comply with the de-

identification checklist attached to this Order as "Exhibit A," within forty-eight hours of receiving service of this Order; and (2) shall permit a representative(s) of Little Caesar on the premises of Defendants' former franchises to confirm their compliance with this requirement.  To the extent that Defendants are not able to access the premises of their former franchises, Defendants will provide Little Caesar with all contact information for the landlord of each of the premises of Defendants' former franchises.

### C. Monetary Damages

#### 1.  Liquidated Damages

Plaintiffs request that default judgment be entered in the amount of $474,144.14 for contractual liquidated damages pursuant to § 14.8 of the Franchise Agreements.  Franchise Agreement § 14.8 "Liquidated Damages Upon Termination Due to Franchisee's Default"; *see also* ECF No. 23, PageID.118.  Plaintiffs provided the declarations of Ms. Lester and Mr. Haveman, as well as its September 25, 2019 letter, as evidence in support of their request.

"Under Michigan law, liquidated-damages provisions are enforceable if the amount is reasonable with relation to the possible injury suffered and not unconscionable or excessive."  *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 706 (6th Cir. 2017) (internal quotation marks and citation omitted).  Such damages are particularly appropriate

"'where the damages which would result from a breach are uncertain and difficult to ascertain' when the contract is executed." *Id. (quoting Moore v. St. Clair County, 328 N.W.2d 47, 50 (Mich. Ct. App. 1982)).* Courts should give effect to the parties' intent and enforce liquidated-damages provisions unless "it is obvious from the contract ... that the principle of compensation has been disregarded." *Curran v. Williams*, 89 N.W.2d 602, 605 (Mich. Ct. App. 1958).

The Court finds that the liquidated damages provision in the Franchise Agreements is enforceable under Michigan law. Defendants agreed upon signing the Franchise Agreements "that a precise calculation of the full extent of the damages Little Caesar w[ould] incur in the event of termination of th[e] Agreement as a result of [Defendants'] default [was] difficult to determine." ECF No. 23, PageID.119. The formula to determine total liquidated damages owed is set forth in §14.8 of that Agreement:

> an amount equal to: (a) the average royalty fees and advertising fees payable by Defendants each month over the twelve-month period immediately preceding the date of termination; (b) multiplied by the lesser of (i) thirty-six months or (ii) the number of months then remaining in the then-current term of the Franchise Agreement.

Franchise Agreement § 14.8 "Liquidated Damages Upon Termination Due to Franchisee's Default"; *see also* ECF No. 23-5, PageID.179; ECF No. 23, PageID.119.

At the time of termination, Defendants' franchises had the following terms remaining on their Franchise Agreements:

| Franchise | Months Remaining |
|-----------|-----------------|
| 1470-0003 | 8.7 |
| 1470-0004 | 46.6 |
| 1470-0006 | 49.6 |

ECF No. 23-5, PageID.180; *see also* ECF No. 23, PageID.120.  According to the formula set forth in §14.8 of the Franchise Agreement, Plaintiffs are entitled to the following liquidated damages:

| Franchise | Royalty Damages | Advertising Damages | Total Damages |
|-----------|-----------------|---------------------|---------------|
| 1470-0003 | $34,920.86 | $25,608.63 | $60,529.49 |
| 1470-0004 | $68,618.16 | $50,319.98 | $118,938.14 |
| 1470-0006 | $170,005.68 | $124,670.83 | $294,676.51 |
| **Total** | | | **$474,144.14** |

ECF No. 23-5, PageID.180; *see also* ECF No. 23, PageID.120–21.

Defendants have been informed of the amounts owed for each franchise.  ECF No. 23, PageID.121.  In his declaration, Mr. Haveman confirmed that Defendants have been aware of these amounts and, as of the date of his declaration, have not made any payments.  ECF No. 23-5, PageID.180.  For example, Plaintiffs included Defendants' obligation to pay the liquidated damages in its September 25, 2019 letter.  ECF No. 23-3, PageID.131.  There, Plaintiffs, after listing the total liquidated damaged owed,[6] asserted "Little Caesar demands that these and all other amounts

---

[6] Plaintiffs concede in their instant Motion that the September 25, 2019 letter, ECF No. 23-3, PageID.131, contained an error in the calculation of the remaining months

owed to Little Caesar and its affiliates be paid immediately." *Id.* This evidence is sufficient to support "with reasonable certainty" the damages claimed. *See Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (internal quotation omitted).

The evidence thus establishes that Defendants owe $474,144.14 for contractual liquidated damages. Accordingly, the Court will enter judgment in Plaintiffs' favor for the amount requested, and post-judgment interest.

### 2. Damages for Breach of the Settlement Agreement

In addition to contractual liquidated damages, Plaintiffs allege that Defendants "immediately breached the Settlement Agreement by failing to pay Little Caesar $11,500.00 owed at signing." ECF No. 12, PageID.72. Plaintiffs cite to ¶ 2 of the Settlement Agreement in their Amended Complaint to support its assertion. Settlement Agreement ¶ 2. The request for these damages was included in two of Plaintiffs' attached exhibits: (1) the September 25, 2019 letter to Defendants, ECF No. 23-3, PageID.131; and (2) Ms. Lester's attached declaration, ECF No. 23-1, PageID.127 ("Defendants have also failed to pay any of the Settlement Agreement payment[.]").

---

of the Franchise Agreement for Franchise No. 1470-0003. *See* ECF No. 23, PageID.120 ("[T]hat error resulted in a total damages number of $76,932.51 instead of the correct total damages number of $60,529.49."). Further, at the hearing on the instant Motion, Plaintiffs' counsel explained that the error was due to an incorrect termination date.

As provided in the Amended Complaint, and thereby admitted when Defendants defaulted, Defendants agreed that it would pay Little Caesar all sums owed, including the $11,500.00 owed pursuant to ¶ 2 of the Settlement Agreement. ECF No. 12, PageID.72. Accordingly, Plaintiffs are entitled to also obtain judgment against Defendants in the amount of $11,500.00, and post-judgment interest.

### D. Attorneys' Fees and Costs

Finally, Plaintiffs seek an award of reasonable attorneys' fees and costs. ECF No. 23, PageID.121. "The parties to a contract may include a provision that the breaching party will be required to pay the other side's attorney fees and such provisions are judicially enforceable." *Zeeland Farm Servs., Inc. v. JBL Enters, Inc.*, 555 N.W.2d 733, 736 (Mich. Ct. App. 1996). Here, Plaintiffs assert that they are entitled to reasonable attorneys' fees and costs in connection with this action pursuant to the Franchise Agreements. Specifically, Plaintiffs claim that under § 23.9, Defendants agreed to reimburse Little Caesar for any attorneys' fees and costs that it was required to incur in order to enforce the Franchise Agreements. ECF No. 23, PageID.121. In their Petition, Plaintiffs point to a Michigan choice-of-law provision in the Franchise Agreements, § 23.1. Under Michigan law, "the parties to an agreement may include within the agreement a provision respecting the payment of attorney fees, which courts will enforce like any other term[.]" *Pransky v. Falcon Grp., Inc.*, 874 N.W.2d 367, 383 (Mich. Ct. App. 2015).

The Court finds that § 23.9 of the Franchise Agreement requires payment of Plaintiffs' attorney fees in the event Plaintiffs initiate an action to enforce the agreement.[7] *Id.* The Court also takes notice that other Courts within this District enforce attorneys' fees provisions like the one in the instant matter. *See PSP Franchising v. Dubois*, No. 17-cv-12835, 2013 WL 782901, at *1 n.1 (E.D. Mich. Feb. 28, 2013); *Dunkin' Donuts Franchised Restaurants LLC v. Mr. Omar, Inc.*, No. 06-15078, 2008 WL 2095352, at *2 (E.D. Mich. May 16, 2008).

While Plaintiffs are generally entitled to recover attorneys' fees, costs, interest, and expenses for their pre-and post-settlement agreement default collection efforts, *Crawley v. Schick*, 211 N.W.2d 217, 222 (Mich. Ct. App. 1973), recovery is limited to reasonable attorney fees. *Papo v. Aglo Rests. of San Jose, Inc.*, 386 N.W.2d 177, 183 (Mich. Ct. App. 1986). Accordingly, the Court must determine whether the amounts Plaintiffs seek are reasonable. In its Motion for Default Judgment, Plaintiffs requested permission to submit an accounting of its fees and costs within fourteen days of this Order. ECF No. 23, PageID.121 n.3. Plaintiffs

---

[7] The Court denotes that Plaintiffs allege in their Amended Complaint that they are also entitled to reasonable attorneys' fees and costs pursuant to the Lanham Act, 15 U.S.C. § 1117. ECF No. 12, PageID.76. The Lanham Act permits an award of "reasonable attorney fees to the prevailing party" in exceptional cases. 15 U.S.C. § 1117(a). Given that the Court has determined that Plaintiffs are entitled to reasonable attorneys' fees and costs pursuant to the Franchise Agreement, it finds that it does not need to make a further determination of the nature of Defendants' acts of infringement at this juncture.

timely submitted their Petition for Attorneys' Fees and Costs, as well as attached evidence, on May 1, 2020.  ECF No. 32.  They seek $41,784.00 in attorney and paralegal fees and $765.67 in related costs.  *Id.* at PageID.248, 254.

A court should begin its analysis of determining the reasonableness of attorneys' fees by determining the "rate customarily charged in the locality for similar legal services[.]"  *Smith v. Khouri*, 751 N.W.2d 472, 475 (Mich. 2008).  In determining customary rates, "Michigan courts rely on 'testimony or empirical data found in surveys or other reliable reports,' like the State Bar of Michigan's Economics of the Law Practice Surveys."  *Hemlock Semiconductor Corp. v. Solarworld Industries Sachsen GmbH*, 13-cv-11037, 2016 WL 6471192, at *2 (E.D. Mich. Nov. 2, 2016) (quoting in part *Smith*, 751 N.W.2d at 480).  The appropriate rate should then be multiplied by the number of hours reasonably expended by each attorney for whom the recovery of fees is sought to derive a "baseline figure."  *Id.*, at *3.  Finally, the court should consider the following factors to decide if any adjustment to the "baseline figure" is warranted:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services, (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly, (3) the amount in question and the results obtained, (4) the expenses incurred, (5) the nature and length of the professional relationship with the client, (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer, (7) the time limitations imposed by the client or by the circumstances, and (8) whether the fee is fixed or contingent.

*Id.* (quotations and citation omitted).

In their Petition, Plaintiffs first assert that the rates charged by their attorneys and paralegal are reasonable.  ECF No. 32, PageID.248.  There were two law firms employed to work on the instant matter.  The law firm Lathrop GPM ("LPGM") served as lead counsel, with three attorneys and one paralegal, while the law firm Miller, Canfield, Paddock & Stone served as local counsel, with one attorney.  The rates charged by the LGPM attorneys—Mr. Stephen J. Vaugh, Mr. Justin L. Sallis, and Mr. Samuel A. Butler—fall within the prevailing market rates for attorneys at similar levels.  *See* ECF No. 32-6, PageID.300.  Further, the rates are reasonable in light of the attorneys' practice area expertise.  ECF No. 32, PageID.249–30; *see also* ECF No. 32-1, PageID.259.  The Court also finds that the rates charged by Mr. Larry Saylor, local counsel from Miller, Canfield, Paddock & Stone, fall within the prevailing market rates for attorneys at similar levels.  *See* ECF No. 32-6, PageID.300–01 (table 6 denotes that the rates charged by attorneys in downtown Detroit are higher than in other Michigan localities).  The Court determines that his rate is reasonable in light of his practice area expertise, which includes complex business disputes and franchise litigation.  ECF No. 32, PageID.250; *see also* ECF No. 32-2.

In addition to its findings as to the attorneys' fees, the Court also determines that the rate charged by LGPM paralegal—Mr. José M. Garcia—is reasonable.  ECF

No. 32, PageID.251. The Court takes notice that Plaintiffs only seek to recover fees for his time at a rate of $150 per hour, even though Mr. Garcia's time was billed at $220 and $230 per hour. *Id.*

Next, Plaintiffs argue that the 106.4 attorney and paralegal hours expended by LGPM and the 1 attorney hour expended by Miller, Canfield, Paddock & Stone are reasonable in light of the several filings in the instant matter. ECF No. 32, PageID.252–53. Plaintiffs submitted invoices in support of its Petition to demonstrate the expended hours. ECF Nos. 32-4, 32-5. The Court denotes that each invoice provides detailed descriptions for each attorney and paralegal's related work on this case. *See id.*

Finally, Plaintiffs assert that the Court need not adjust the requested fees given that they are reasonable. ECF No. 32, PageID.253–54. The Court agrees. The factors that the Court may consider in determining whether any adjustment is warranted justify the reasonableness of Plaintiffs' instant request. *See Hemlock*, 2016 WL 6471192, at *2. For example, Plaintiffs' counsel brought significant experience and expertise in this matter. *Id.* (factor one); *see also* ECF No. 32, PageID.253. Additionally, the results achieved in this matter are significant in order to enforce the basic tents of the parties' Franchise Agreements. *See* ECF No. 32, PageID.253.

In addition to the requested fees, Plaintiffs seek an award of $765.67 in costs. *Id.* at PageID.254. Plaintiffs submitted the declarations of Mr. Vaugh and Mr. Saylor as evidence of the costs in filing fees, service of process, and document delivery. ECF No. 32-1, PageID.260; ECF No. 32-2, PageID.265. The Court finds that such costs are reasonable.

Upon review of the Petition, as well as the attached declarations and invoices, the Court concludes that the attorneys' fees and costs set forth therein are reasonable pursuant to § 23.9 of the Franchise Agreements. Accordingly, the Court finds that Plaintiffs are entitled to $42,549.67 in attorneys' fees and costs, plus interest, from Defendants for Defendants' breaches of the Franchise Agreements and the Settlement Agreement.

## V. CONCLUSION

For the reasons articulated above, **IT IS ORDERED** that Plaintiffs' Motion for Default Judgment [#23] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' conduct violated the terms of the Franchise Agreements and the Settlement Agreement between the parties;

**IT IS FURTHER ORDERED** that Defendants, and all other persons in active concert or participation with them, are **HEREBY ORDERED** to immediately and fully comply with the post-termination obligations contained in Sections 14 and 15 of the Franchise Agreements. Those obligations include but are not limited to

the requirement that, to the extent that Defendants still are able to ac-cess the former premises of their former Little Caesars franchises, they shall comply with the de-identification checklist as "Exhibit A," within forty-eight hours of receiving service of this Order, and shall permit a representative(s) of Little Caesar on the premises of Defendants' former Little Caesars franchises to confirm their compliance with this requirement;

**IT IS FURTHER ORDERED** that, to the extent that Defendants are not able to access the former premises of their former Little Caesars franchises, Defendants are **HEREBY ORDERED** to provide Little Caesar with all contact information in Defendants' possession for the landlord of each of the former premises of Defendants' former Little Caesars franchises;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter a judgment in favor of Little Caesar and against Defendants, jointly and severally, in the amount of **$11,500.00**, plus interest, as damages for breach of the parties' Settlement Agreement; in the amount of **$474,144.14,** plus interest, for liquidated damages pursuant to the liquidated damages provision contained in Section 14.8 of the parties' Franchise Agreements; and in the amount of **$42,549.67**, plus interest, for attorneys' fees and costs incurred in this matter.

**IT IS SO ORDERED**.

Dated:        May 11, 2020

/s/Gershwin A. Drain
HON. GERSWHIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 11, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

# EXHIBIT A
## STORE DE-IDENTIFICATION CHECKLIST

Remove all exterior LITTLE CAESARS signs;
Remove LITTLE CAESARS panel on the monument sign;
Remove LITTLE CAESARS materials from the lobby;
Remove LITTLE CAESARS front counter panel;
Remove all POP materials from the store;
Remove all window banners;
Remove all LITTLE CAESARS translights from the menu board;
Remove all LITTLE CAESARS product descriptions from the menu board;
Remove all LITTLE CAESARS job helpers, time management guidelines, product prep charts;
Remove all LITTLE CAESARS paperwork, forms, applications, charts;
Return all LITTLE CAESARS training materials to Little Caesar Corporate;
Discontinue using all LITTLE CAESARS materials in any advertising;
Remove all LITTLE CAESARS pizza boxes and any LITTLE CAESARS packaging from the store;
Remove all pizza spice, dough mix and other proprietary food items from the store;
Discontinue the use of any LITTLE CAESARS product preparation procedures or secret recipes;
Remove all LITTLE CAESARS uniforms from the store;
Pay off all local vendors;
Cancel phone and all yellow page ads;
Remove all LITTLE CAESARS logo's from checks and accounting paperwork; and
Take all other action to remove from the store all trademarks and trade dress associated with LITTLE CAESARS.